

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 29, 2026**

_____
**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| Blue Duck Energy, Ltd., | § | Case No. 24-20224-bwo11 |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| JetTexas Oil, LLC, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Adversary No. 24-02006-bwo |
| | § | |
| Stewart Hoge, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION</u>

On March 10, 2026, Seth Wadley ("Wadley"), Wadley Family Investments, LLC

("WFI"), and Purple Dog Investments, LLC ("Purple Dog" and collectively, the

"Wadley Defendants") filed their *Motion to Dismiss for Lack of Subject Matter*

1

*Jurisdiction and Brief in Support* ("Motion to Dismiss"). Dkt. No. 274.[1] Plaintiffs, JetTexas Oil, LLC ("JetTexas") and Garrett Johnson, opposed the Motion to Dismiss [Dkt. No. 298], and Stewart Hoge ("Hoge"), Hoge & Gameros, LLP ("H&G"), Indian Territory Holdings, LLC ("ITH"), and Stewart B. Hoge, PC ("Hoge PC") (collectively, the "Hoge Defendants") filed a joinder to the Motion to Dismiss [Dkt. No. 309].

On April 14, 2026, the Court commenced a hearing on the Motion to Dismiss, at which the Court requested additional briefing. Parties timely filed their respective briefs [Dkt. Nos. 320, 321, 323, 324], and the matter was taken under advisement.

The Motion to Dismiss asserts that the Court lacks subject matter jurisdiction to adjudicate the disputes among non-debtor third parties. While the Motion to Dismiss focuses on Plaintiffs' claims against the Wadley Defendants, the Court has a "continuing obligation to examine the basis for [its] subject matter jurisdiction," which it may raise *sua sponte. Faulkner v. Eagle View Cap. Mgmt.* (*In re The Heritage Org., L.L.C.*) 454 B.R. 353, 364 (Bankr. N.D. Tex. 2011) (Houser, J.); *see Bass v. Denney* (*In re Bass*), 171 F.3d 1016, 1021 (5th Cir. 1999).

Since the Court took the Motion to Dismiss under advisement, in Blue Duck Energy, Ltd.'s ("Blue Duck") bankruptcy case, the Chapter 11 Trustee ("Trustee") confirmed a plan of reorganization (the "Plan"). Case No. 24-20224, Dkt. No. 210. Confirmation of the Plan may likewise affect the Court's subject matter jurisdiction. *See Bank of La. v. Craig's Stores of Tex., Inc.* (*In re Craig's Stores of Tex., Inc.*), 266

---

[1] Unless otherwise stated, all "Dkt. No" references herein are to the above-captioned adversary proceeding.

F.3d 388, 390 (5th Cir. 2001). Therefore, the Court *sua sponte* analyzes its subject matter jurisdiction for all claims brought in this adversary proceeding, not just the claims addressed in the Motion to Dismiss.

For the reasons discussed below, the Court grants in part and denies in part the Motion to Dismiss. The Court lacks subject matter jurisdiction over Plaintiffs' usury claim against the Wadley Defendants, and the counterclaims and third-party claims brought by Hoge against Garrett Johnson, Brandi E. Johnson, and Jacob "Jack" Ziegler. The Court remands these claims to the 192nd Judicial District Court of Dallas County, Texas.

## I.   Background

1.   This litigation has a rather storied past with many rounds of court intervention and minimal substantive resolution. Relevant to the Court's decision, the litigation was originally commenced in state court, then removed here when Blue Duck filed its bankruptcy petition. Even though there are multiple parties to this adversary proceeding, it (and the underlying bankruptcy case) is largely a two-party dispute over oil and gas interests.

2.   The following summarizes all claims pending before the Court, including those for which the Wadley Defendants challenge the Court's subject matter jurisdiction:

Plaintiffs' Claims[2]

3.    Plaintiffs bring the following claims against the Defendants in their

*Original Complaint and Application for Temporary Restraining Order and*

*Temporary Injunction* (hereinafter, the "Fourth Amended Complaint") [Dkt. No.

206]:[3]

- Fraud (Against Hoge and ITH)
- Breach of Contract (Against Hoge, Blue Duck, and Blue Duck GP, LLC ("Blue Duck GP"))
- Breach of Fiduciary Duty (Against Hoge, Hoge PC, H&G, Blue Duck, and Blue Duck GP)
- Aiding and Abetting Breach of Fiduciary Duty (Against Hoge, Hoge PC, H&G, Blue Duck, Blue Duck GP, and James Kondziela ("Kondziela"))[4]
- Usurious Interest (Against the Wadley Defendants)
- Fraud (Against Hoge, Hoge PC, H&G, and the Wadley Defendants)
- Fraudulent Inducement (Against Hoge, Hoge PC, H&G, and the Wadley Defendants)
- Civil Conspiracy to Commit Fraud (Against Hoge, Hoge PC, H&G, and the Wadley Defendants)
- Aiding and Abetting Breach of Fiduciary Duty (Against the Wadley Defendants)
- Conversion (Against the Hoge Defendants, Blue Duck, and Blue Duck GP)
- Violations of the Texas Theft Liability Act (Against the Hoge Defendants, Blue Duck, and Blue Duck GP)
- Constructive Trust (Against the Hoge Defendants and Blue Duck GP)
- Demand for Accounting

---

[2] Plaintiffs' Fourth Amended Complaint, Dkt. No. 206.

[3] Each claim is listed as it is titled in the Fourth Amended Complaint and parenthetically identifies against whom the claim is alleged.

[4] Kondziela also filed a partial summary judgment motion on March 13, 2026, in which he argued that "aiding and abetting breach of fiduciary duty" is not a recognized cause of action in Texas, piercing the corporate veil was not available as to Kondziela, and there was nothing to declare related to Kondziela in Plaintiffs' request for declaratory relief. Dkt. Nos. 282, 283. On June 17, 2026, the Court denied Kondziela's partial summary judgment motion. Dkt. No. 332.

- Piercing the Corporate Veil/Alter Ego (Against the Hoge Defendants, Kondziela, and Blue Duck GP)
- Declaratory Judgment (Against the Hoge Defendants, Kondziela, Blue Duck, and Blue Duck GP)
- Declaratory Judgment (Against Hoge, Blue Duck, Blue Duck GP, ITH, and the Wadley Defendants)

<u>Stewart Hoge's Counterclaims and Third-Party Claims</u>[5]

4.      Hoge brings the following counterclaims and third-party claims (the "Hoge Claims") against Garrett Johnson, Brandi E. Johnson, and Jacob "Jack" Ziegler:

- Misappropriation of Name
- Tortious Interference
- Infringement of Common Law Mark
- Civil Conspiracy

<u>Trustee's Claims</u>[6]

5.      Because aspects of Plaintiffs' claims became property of Blue Duck's bankruptcy estate upon its bankruptcy filing, the Trustee also asserts those claims alleged by Plaintiffs that belong to the estate. The Trustee additionally alleges separate claims against various Defendants that arise under or arise in Blue Duck's bankruptcy case. The Court identifies these claims and against whom each claim is brought in parentheses:

- To the extent it relates to Blue Duck, and as alleged in Plaintiffs' Fourth Amended Complaint:

---

[5] Hoge's *Counterclaims, Third-Party Petition and Verified Application for Temporary and Permanent Injunctive Relief*, Dkt. No. 4-6.

[6] *Chapter 11 Trustee's Original Complaint*, Dkt. No. 209.

5

- o Breach of Fiduciary Duty (Against Blue Duck GP, Hoge, H&G, and Hoge PC)
- o Aiding and Abetting Breach of Fiduciary Duty (Against Blue Duck GP, Hoge, H&G, and Hoge PC)
- o Conversion (Against Blue Duck GP and the Hoge Defendants)
- o Violations of the Texas Theft Liability Act (Against Blue Duck GP and the Hoge Defendants)
- o Demand for Accounting (Against the Hoge Defendants and Blue Duck GP)
- o Piercing the Corporate Veil (Against the Hoge Defendants, Kondziela, and Blue Duck GP)
- o Declaratory Relief (Hoge, Blue Duck GP, ITH, and the Wadley Defendants)
- Money Had & Received (Against Plaintiffs)
- Money Had & Received (Against the Hoge Defendants)
- Avoidance and Recovery of Fraudulent Conveyance (Against Plaintiffs)
- Avoidance and Recovery of Fraudulent Conveyance (Against the Hoge Defendants)
- Declaratory Relief related to the rightful interest owners of Blue Duck
- Objection to Hoge's Proof of Claim
- Objection to Kondziela's Proof of Claim
- Objection to Blue Duck GP's Proof of Claim
- Objections to Plaintiffs' Proofs of Claim

<u>Overarching Issue in this Adversary Proceeding and the Bankruptcy Case</u>

6. Garrett Johnson is the principal owner of JetTexas, and Hoge is the principal owner of ITH. JetTexas and ITH were the original limited partners of Blue Duck. According to the Plaintiffs' Fourth Amended Complaint [Dkt. No. 206], Hoge and Garrett Johnson created Blue Duck to purchase, manage, and sell profitable oil and gas interests from the Estate of T. Boone Pickens. The transaction also resulted in the creation of Blue Duck GP, which is Blue Duck's general partner, and for which Kondziela serves as non-owner manager. Hoge, allegedly acting as Plaintiffs' attorney, drafted Blue Duck's partnership agreement that split the entity ownership interests 50-50 between JetTexas and ITH.

7.    The parties now dispute the ownership structure of Blue Duck, which remains a primary dispute in the adversary proceeding and the bankruptcy case.

8.    Plaintiffs dispute Blue Duck's current ownership structure. They allege that ITH failed to fulfill a condition precedent to receive its interest in Blue Duck, which entitles JetTexas to 100% ownership of Blue Duck. In contrast, the Hoge Defendants and Wadley Defendants allege WFI, presumably solely owned by Wadley, owns 50% of Blue Duck through its acquisition of JetTexas's interest. JetTexas disputes this, alleging WFI loaned JetTexas money at a usurious interest rate.

9.    The "Bill of Sale" attached to the Fourth Amended Complaint is central to the ownership dispute between the parties. Plaintiffs dispute any transfer of ownership and assert the Bill of Sale is void *ab initio* or is voidable because of Defendants' wrongful actions (including fraud, fraudulent inducement, and breach of fiduciary duties).  Whereas, from the outset of this litigation, the Hoge Defendants and Wadley Defendants asserted that the Bill of Sale effectuated a sale of Plaintiffs' Blue Duck and related-entity ownership to WFI.

10.   Because of the ownership issue and actions taken by Hoge pre-petition, Plaintiffs immediately sought court intervention regarding control of Blue Duck during the bankruptcy case. *See* Case No. 24-20224, Dkt. No. 25. On Plaintiffs' *Motion to Appoint Trustee or Examiner*, the Court appointed the Trustee and thrust him into the middle of this conflict. *Id.*, Dkt. Nos. 25, 85, 93. Immediately, the Trustee sought to resolve the ownership dispute and determine how Blue Duck could exit

bankruptcy. To that end, the Trustee formulated the Plan providing for Blue Duck's continued operation and an exit from bankruptcy. *Id.*, Dkt. No. 191.

11.    The Plan's principal component is resolution of the above-described ownership dispute. *Id.* Pending final resolution of the adversary proceeding, the Trustee will remain in control of Blue Duck. *Id.* at i, 12. In fact, as stated in the Plan and confirmation order, substantial consummation of the Plan will not occur until this adversary proceeding is resolved by final order. *Id.* at 23; Case No. 24-20224, Dkt. No. 210, ¶21. On May 18, 2026, the Court confirmed the Plan. Case No. 24-20224, Dkt. No. 210.

12.    In this adversary proceeding, Plaintiffs requested partial summary judgment on the issue of whether the Bill of Sale was void *ab initio*. Dkt. No. 212. On February 6, 2026, the Court entered an order declaring the Bill of Sale void *ab initio* and that it

> did not effectuate a transfer of JetTexas Oil, LLC's equity interests in Blue Duck Energy, Ltd.; Blue Duck GP, LLC; and Blue Duck MVR, LLC—to the extent JetTexas Oil, LLC held equity interests in each of these entities—to Wadley Family Investments, LLC or any assignee or affiliate of Wadley Family Investments, LLC.

Dkt. No. 253. Following entry of this Order, the Wadley Defendants filed the Motion to Dismiss arguing that Plaintiffs' remaining claims against them were beyond this Court's subject matter jurisdiction.

## II.    Analysis

### Bankruptcy Jurisdiction

13.    Bankruptcy jurisdiction "remains one of the most enduring puzzles of

our federal court system." Ralph Brubaker, *On the Nature of Federal Bankruptcy Jurisdiction: A General Statutory and Constitutional Theory*, 41 WM. & MARY L. REV. 743, 746 (2000). The Court endeavors to piece this puzzle together to determine its subject matter jurisdiction over the claims alleged in this adversary proceeding.

14. Congress established and set the limitations of bankruptcy jurisdiction by statute. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). Bankruptcy jurisdiction begins with the federal district courts. *See* 28 U.S.C. § 1334.[7] Federal district courts "have original and exclusive jurisdiction of all cases under title 11" (bankruptcy cases) and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *Id.*, § 1334(a), (b).

15. Matters "arising under Title 11" are those that involve a cause of action created by the Bankruptcy Code. *Wilborn v. Wells Fargo Bank, N.A.* (*In re Wilborn*), 609 F.3d 748, 752 (5th Cir. 2010). Causes of action, which, by their nature, can only arise in bankruptcy cases, are considered "arising in" cases under Title 11. *Id.* And lastly, matters, the outcome of which could conceivably have any effect on the estate being administered in bankruptcy, are "related to cases under Title 11." *Walker v. The Cadle Co.* (*In re Walker*), 51 F.3d 562, 569 (5th Cir. 1995).

16. "Related to" jurisdiction is more specifically described as an action that "could alter the debtor's rights, liabilities, options, or freedom of action (either

---

[7] Unless otherwise stated, all "§" or "section" references herein are to Title 28 of the United States Code.

9

positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.* (citation modified). Because § 1334(b) speaks of bankruptcy jurisdiction in the disjunctive, ultimately, it is necessary to ascertain only whether a claim is, at least, "related to" the bankruptcy. *Id.* (quoting *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 93 (5th Cir. 1987)) (internal quotation omitted). Bankruptcy jurisdiction does not exist over matters that have no effect on the debtor's estate. *Id.* (quoting *Celotex Corp.*, 514 U.S. at 308 n.6) (internal quotation omitted).

17.     "Related to" jurisdiction does not depend on the action being brought by or against the debtor, or against property of the estate. *Celotex Corp.*, 514 U.S. at 308 n.6. Rather, bankruptcy jurisdiction may exist over claims between non-debtor parties so long as the resolution of such claims could conceivably affect the bankruptcy estate. *See Randall & Blake, Inc. v. Evans* (*In re Canion*), 196 F.3d 579, 586 (5th Cir. 1999) (reducing the bankruptcy estate's liability, even potential reduction, suffices to confer "related to" jurisdiction).

18.     Further, "related to" jurisdiction does not require certainty of an effect on the bankruptcy estate. *Id.* at 587. Instead, the test is whether the claim will have "any *conceivable* effect" on the bankruptcy estate. *Id.* (emphasis in original); *see Lone Star State Bank of W. Tex. v. Waggoner* (*In re Waggoner Cattle, LLC*), No. 18-02003, 2018 WL 6060351, at *2 (Bankr. N.D. Tex. Nov. 19, 2018) (Jones, J.) (finding conceivable effect for bankruptcy jurisdiction over dispute between bank and debtor's accounting firm despite uncertainty).

19. While "related to" jurisdiction appears expansive, the Supreme Court held it is not limitless. *Celotex Corp.*, 514 U.S. at 308; *see also TMT Procurement Corp. v. Vantage Drilling Co. (In re TMT Procurement Corp.)*, 764 F.3d 512, 526 (5th Cir. 2014). Common facts to other core proceedings, convenience of the parties, cost-savings, and judicial economy are all insufficient considerations to confer "related to" jurisdiction absent a conceivable effect on the bankruptcy estate. *See In re Canion*, 196 F.3d at 585; *In re The Heritage Org.*, 454 B.R. at 367 n.9; *In re Waggoner Cattle, LLC*, 2018 WL 6060351, at *2.

20. Likewise, in the Fifth Circuit, after a plan is confirmed, bankruptcy jurisdiction narrows. *See In re Craig's Stores*, 266 F.3d at 390 (holding bankruptcy jurisdiction did not exist over post-confirmation claims based on post-confirmation activities). Generally speaking, after plan confirmation, bankruptcy jurisdiction exists only to implement or execute the plan. *Id.*; *see also U.S. Brass Corp. v. Travelers Ins. Grp., Inc. (In re U.S. Brass Corp.)*, 301 F.3d 296, 305 (5th Cir. 2002) (holding bankruptcy court had jurisdiction to consider motion post-confirmation because the issue went to the implementation or execution of the plan). Nonetheless, plan confirmation does not divest the court of "[bankruptcy] jurisdiction over pre-confirmation claims based on pre-confirmation activities." *Newby v. Enron Corp.*, 535 F.3d 325, 335 (5th Cir. 2008).

21. Finally, while "[f]ederal courts must be assured of their subject matter jurisdiction at all times[,]" *In re Bass*, 171 F.3d at 1021, jurisdiction depends on the state of the litigation at the time of filing or removal. *See Double Eagle Energy Servs.,*

11

*L.L.C. v. MarkWest Utica EMG, L.L.C.*, 936 F.3d 260, 263 (5th Cir. 2019) (holding bankruptcy jurisdiction existed at time debtor brought action against defendant, and later assignment of claim to non-debtor third party did not destroy bankruptcy jurisdiction); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996) (holding district court retained jurisdiction even though it dismissed debtor from litigation because at time of removal bankruptcy jurisdiction existed). If bankruptcy jurisdiction existed at the outset of the case, then bankruptcy jurisdiction does not go away because a claim is assigned to a non-debtor party, *see Double Eagle*, 936 F.3d at 263, the bankruptcy case closes, *see id.* at 263–64, or the court resolves through dispositive motions the claims that originally invoked bankruptcy jurisdiction. *See Doddy*, 101 F.3d at 455–56.

<u>Bankruptcy Courts</u>

22.     Bankruptcy courts are units of the district courts. *See* 28 U.S.C. § 151. Ultimately, bankruptcy courts, as opposed to the district courts, most often exercise congressionally authorized bankruptcy jurisdiction. While 28 U.S.C. § 1334 provides bankruptcy jurisdiction to the district court, 28 U.S.C. § 157(a) authorizes district courts to refer all bankruptcy cases and proceedings to the bankruptcy judge that sits within the district. Therefore, a bankruptcy court's jurisdiction is only as extensive as a district court's bankruptcy jurisdiction.[8] *See In re Walker*, 51 F.3d at 569–70. For example, the Fifth Circuit held that a district court cannot refer claims that arise

---

[8] As discussed more fully below, jurisdiction and constitutional authority are separate and distinct limits on what a bankruptcy court can adjudicate to a final order or judgment.

12

under its supplemental jurisdiction to the bankruptcy court, because 28 U.S.C. § 157(a) limits referral to those cases that specifically invoke bankruptcy jurisdiction. *See id.* at 573 ("Congress has gone to great lengths to determine what proceedings may be tried by bankruptcy courts, and the exercise of ancillary and pendent jurisdiction by bankruptcy courts could subsume the more restrictive 'relate to' and 'arising in' jurisdiction, such that the latter would be rendered substantially, if not entirely, superfluous.") (internal citation and quotation omitted).

23.    The District Courts in the Northern District of Texas have referred all bankruptcy cases to the bankruptcy judges within the district. Misc. Order No. 33, *Order of Reference of Bankruptcy Cases and Proceedings* Nunc Pro Tunc (N.D. Tex. Aug. 3, 1984) (referring all bankruptcy cases and proceedings to the United States Bankruptcy Court for the Northern District of Texas). Thus, this Court may exercise bankruptcy jurisdiction over this adversary proceeding, to the extent bankruptcy jurisdiction exists.

Core vs. Non-Core Proceedings

24.    Because Plaintiffs' objection to the Motion to Dismiss argues that the Wadley Defendants consented to this Court's jurisdiction, the Court takes this opportunity to elaborate on the equally complex issue of core vs. non-core proceedings and a bankruptcy court's authority to enter final orders or judgments.

25.    Parties cannot confer subject matter jurisdiction upon federal courts. *In re Canion*, 196 F.3d at 585 (citing *Sosna v. Iowa*, 419 U.S. 393 (1975)). Even if the

13

Wadley Defendants' actions in this adversary proceeding constitute consent, it would not bestow upon the Court subject matter jurisdiction.

26.     On the contrary, a party *can* consent to the bankruptcy court entering final orders or judgments in matters that are not core. *See* 28 U.S.C. § 157(c)(2); *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 670–71 (2015).

27.     While "related to" bankruptcy jurisdiction is the minimum, courts must do a more detailed analysis to determine whether the matter is a core or non-core proceeding. Core proceedings are those that arise under or arise in a case under title 11. 28 U.S.C. § 157(b)(1). A bankruptcy court has both statutory and constitutional authority to enter final orders or judgments in core proceedings. *See id.*; *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 33–34 (2014). While not an exhaustive list, § 157(b)(2) provides a list of matters that Congress designated as core proceedings. 28 U.S.C. § 157(b)(2).[9]

28.     Non-core proceedings are those proceedings that are "otherwise related to a case under title 11." *Exec. Benefits*, 573 U.S. at 34 (quoting 28 U.S.C. § 157(c)(1)). The bankruptcy court has statutory authority to hear a non-core proceeding but does not have statutory or constitutional authority to enter final orders or judgments. *See*

---

[9] The Court recognizes, as announced in *Stern v. Marshall*, that Congress's list of "core" proceedings may provide statutory authority to enter final orders or judgments, but Article III may still deny a bankruptcy court constitutional authority to enter final orders or judgments in certain matters—a *Stern* claim. 564 U.S. 462, 487 (2011). After *Stern* was decided, the Supreme Court issued its opinion in *Executive Benefits*, which provides that bankruptcy courts should determine whether the *Stern* claim satisfies the requirements of a non-core claim and follow 28 U.S.C. § 157(c)(1) by issuing proposed findings of fact and conclusions of law for the district court to review *de novo*. *Exec. Benefits*, 573 U.S. at 36. Then the Supreme Court issued its opinion in *Wellness International*, which provides that parties can consent to a bankruptcy court entering final orders or judgments on *Stern* claims. *Wellness Int'l*, 575 U.S. at 669.

28 U.S.C. § 157(c)(1); *Exec. Benefits*, 573 U.S. at 34. The bankruptcy judge must submit proposed findings of fact and conclusions of law to the district judge. 28 U.S.C. § 157(c)(1). The district judge, after *de novo* review, shall enter any final order or judgment. *Id.*

29.     With the parties' consent, however, a bankruptcy judge can hear and issue final orders and judgments in non-core proceedings. *See* 28 U.S.C. § 157(c)(2). Consent is either explicit or implied by a party's actions. *See Villegas v. Tex. State Bank* (*In re BFG Invs. LLC*), 366 F. App'x 513, 515–16 (5th Cir. 2010).

30.     Previously, this Court issued its Report and Recommendation, which the district court adopted, regarding the parties' consent to this Court hearing and issuing final orders and judgments in this adversary proceeding. Dkt. Nos. 215, 301. The Court stands by its Report and Recommendation on the issue of the Court's constitutional authority in this adversary proceeding to issue a final order or judgment.[10] The Wadley Defendants now specifically challenge the Court's subject matter jurisdiction. And, based on the analysis explained herein, some claims alleged in this adversary proceeding do not invoke the Court's bankruptcy jurisdiction.

31.     With these limitations in mind, the Court analyzes each of the claims alleged in this adversary proceeding to determine whether it has bankruptcy

---

[10] At the time the Defendants sought to withdraw the reference, no party raised any issue about whether bankruptcy jurisdiction exists over the claims in this adversary proceeding. Instead, the issue before the Court was consent by the parties for this Court to enter final judgments or orders, and waiver of the parties' right to a jury trial. *See* Dkt. Nos. 148, 215. Thus, when the Court issued its Report and Recommendation, bankruptcy jurisdiction was not the focal point of the analysis.

jurisdiction.[11] The Court conducts its analysis keeping in mind the principle that "the jurisdiction of the court depends upon the state of things at the time of the action brought." *Double Eagle*, 936 F.3d at 263 (citation modified).

### III. Resolution of Motion to Dismiss

<u>Plaintiffs' Claims Within the Court's Bankruptcy Jurisdiction</u>

32. Determining Blue Duck's ownership is at the heart of this adversary proceeding. As stated above, Plaintiffs posit, through multiple claims, that JetTexas is at least a 50% owner of Blue Duck, ITH is not an owner of Blue Duck, and none of the Wadley Defendants is an owner of Blue Duck. For example, Plaintiffs allege that Hoge breached Blue Duck's partnership agreement because ITH failed to make its initial $1,000,000 capital contribution, and this failure prevents ITH from having an ownership interest in Blue Duck.

33. Likewise, Plaintiffs allege that the Hoge Defendants, the Wadley Defendants, Kondziela, and Blue Duck GP either committed fraud, breached fiduciary duties, and/or participated in another party's fraud or breach of fiduciary duties. Seemingly these claims may only affect Plaintiffs, but their determination could conceivably affect Blue Duck's ownership. Also, these claims allege that duties were owed to Blue Duck, such duties were breached, and Blue Duck was damaged.

---

[11] The term "proceeding," as used in 28 U.S.C. § 1334(b), is broad and intended to capture anything that occurs in the bankruptcy case. COLLIER ON BANKRUPTCY ¶ 3.01[d] (Richard Levin & Henry J. Sommer eds., 16th ed.). As the Court does here, at least one other bankruptcy court analyzed its subject matter jurisdiction on a claim-by-claim basis. *Sikes v. Crescent Bank & Tr.* (*In re Linder Oil Co.*), No. No. 17-51323, 2025 WL 1024823, at *7 (Bankr. W.D. La. Mar. 31, 2025).

34. Plaintiffs also brought claims to recover assets of Blue Duck that were dissipated pre-petition by the Hoge Defendants, Kondziela, or both. The Trustee joined in these claims and seeks to recover any improper distributions by the Hoge Defendants, Kondziela, or both. Plaintiffs likewise seek a constructive trust over the Hoge Defendants' and Blue Duck GP's assets that may have been acquired through these improper distributions.

35. Finally, Hoge and Kondziela filed proofs of claim in Blue Duck's bankruptcy case. The Court understands that if Hoge, Kondziela, or both are liable to Plaintiffs for breaches of fiduciary duties, then Hoge and Kondziela assert, under the partnership agreement, indemnification rights against Blue Duck's estate. Any indemnification rights of Hoge and Kondziela, to the extent they exist, could conceivably affect the administration of or liabilities against Blue Duck's estate.

36. The Court finds that the following causes of action could conceivably affect the administration of Blue Duck's bankruptcy estate and are, therefore, within this Court's bankruptcy jurisdiction. *See In re Wood*, 825 F.2d at 93.

- Fraud (Against Hoge and ITH)
- Breach of Contract (Against Hoge, Blue Duck, and Blue Duck GP)
- Breach of Fiduciary Duty (Against Hoge, Hoge PC, H&G, Blue Duck, and Blue Duck GP)
- Aiding and Abetting Breach of Fiduciary Duty (Against Hoge, Hoge PC, H&G, Blue Duck, Blue Duck GP, and Kondziela)
- Fraud (Against Hoge, Hoge PC, H&G, and the Wadley Defendants)
- Fraudulent Inducement (Against Hoge, Hoge PC, H&G, and the Wadley Defendants)
- Civil Conspiracy to Commit Fraud (Against Hoge, Hoge PC, H&G, and the Wadley Defendants)
- Aiding and Abetting Breach of Fiduciary Duty (Against the Wadley Defendants)
- Conversion (Against the Hoge Defendants, Blue Duck, and Blue Duck GP)

17

- Violations of the Texas Theft Liability Act (Against the Hoge Defendants, Blue Duck, and Blue Duck GP)
- Constructive Trust (Against the Hoge Defendants and Blue Duck GP)
- Demand for Accounting
- Piercing the Corporate Veil/Alter Ego (Against the Hoge Defendants, Kondziela, and Blue Duck GP)
- Declaratory Judgment (Against the Hoge Defendants, Kondziela, Blue Duck, and Blue Duck GP)
- Declaratory Judgment (Against Hoge, Blue Duck, Blue Duck GP, ITH, and the Wadley Defendants)

37.     In each instance, the resolution of these claims could conceivably affect Blue Duck's bankruptcy administration by altering Blue Duck's rights and liabilities. Bankruptcy jurisdiction exists over these claims.

38.     The Wadley Defendants argue that the Court declaring the Bill of Sale void *ab initio* divested the Court of its jurisdiction to resolve all remaining claims alleged against the Wadley Defendants. This argument ignores the Fifth Circuit's "time-of-filing" rule. *See Double Eagle*, 936 F.3d at 263. When this case was removed from state court, the Court had bankruptcy jurisdiction over all the claims against the Wadley Defendants except for Plaintiffs' usury claim, as discussed more fully below. Such jurisdiction was not lost when the Court declared the Bill of Sale void *ab initio*. *See Doddy*, 101 F.3d at 455–56.

39.     Moreover, confirming Blue Duck's Plan did not divest the Court of its bankruptcy jurisdiction in this adversary proceeding. At issue are pre-confirmation claims based on pre-confirmation activities. *See Enron Corp.*, 535 F.3d at 335. The claims likewise pertain to Blue Duck's Plan implementation and execution. *See In re Craig's Stores*, 266 F.3d at 390.

18

<u>Plaintiffs' Claim Beyond the Court's Bankruptcy Jurisdiction</u>

40.     Plaintiffs' claim, by contrast, for Usurious Interest (Against the Wadley Defendants) is not within the Court's subject matter jurisdiction.

41.     Plaintiffs' usury claim hinges on whether the money received from and paid back to the Wadley Defendants constitutes a loan. While Plaintiffs' usury claim shares common facts with the other claims over which the Court finds bankruptcy jurisdiction, "common facts alone are insufficient to confer 'related to' jurisdiction." *In re Canion*, 196 F.3d at 585 (citing *Feld v. Zale Corp.* (*In re Zale Corp.*), 62 F.3d 746, 753 (5th Cir. 1995)).

42.     Plaintiffs' usury claim is not statutorily created by the Bankruptcy Code, does not arise by the mere fact that Blue Duck sought bankruptcy protection, and will not affect Blue Duck's bankruptcy estate or its administration. While it is possible that the ruling of this Court might guide a state court on whether the transaction in question was a loan or sale, any damages awarded to either side will be of no benefit to or reduce Blue Duck's estate. Therefore, the Court does not have bankruptcy jurisdiction over Plaintiffs' usury claim against the Wadley Defendants.

43.     Here, the "time-of-filing" rule" discussed in *Double Eagle Energy* and *Doddy* does not change the Court's analysis. While *Double Eagle Energy* and *Doddy* stand for the proposition that later actions taken in a case do not divest a bankruptcy court of jurisdiction, regrettably the Court never had bankruptcy jurisdiction over Plaintiffs' usury claim when it was removed. *See Double Eagle*, 936 F.3d at 263;

19

*Doddy*, 101 F.3d at 456. And without supplemental jurisdiction over the claim, *see Walker*, 51 F.3d at 570–73, the Court is without jurisdiction to adjudicate it.

<u>The Hoge Claims</u>

44.     The Court does not have subject matter jurisdiction over any of the Hoge Claims. Hoge's counterclaims and third-party claims for Misappropriation of Name, Tortious Interference, Infringement of Common Law Mark, and Civil Conspiracy are not "related to" Blue Duck's bankruptcy case. The Hoge Claims arise from allegations by Hoge that Garrett Johnson, his wife, and Jacob "Jack" Ziegler inappropriately used his name and mark for personal gain without Hoge's permission. Any resolution of the Hoge Claims could not and will not have a conceivable effect on Blue Duck's bankruptcy case or its administration.

<u>Trustee's Claims</u>

45.     All the claims alleged in the *Chapter 11 Trustee's Original Complaint* are within the Court's subject matter jurisdiction. At a minimum, resolution of the Trustee's claims will have a conceivable effect on Blue Duck's estate and come within the scope of "related to" jurisdiction.

<u>Dismissal or Remand</u>

46.     During the hearing on the Motion to Dismiss, the Court raised the issue with the parties about whether to dismiss the claims for which the Court lacks bankruptcy jurisdiction or remand them back to state court. The Wadley Defendants did not take a firm position on either option and simply acknowledged that remand

20

is a possibility. Plaintiffs asserted remand is appropriate if the Court found it lacked bankruptcy jurisdiction.

47. Considering that this case (1) was originally removed from state court, (2) has been pending for many years, both at the state court and bankruptcy court level, (3) is ready for trial and all sides have taken extensive discovery, and (4) includes claims for which the statute of limitations is expired, the Court finds that remand is appropriate. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 40 (2025) (listing factors courts can consider supporting discretion to dismiss or remand).

48. 28 U.S.C. § 1452 governs removal of claims related to bankruptcy cases. Subsection (b) provides that a court may remand such claim or cause of action back to the court from which it was removed on any equitable ground. 28 U.S.C. § 1452(b). Section 1452 speaks to claims or causes of action in the singular form. The Court interprets this language to mean that it can remand separate and distinct claims or causes of action back to the original court without having to remand the entire proceeding. *See* 28 U.S.C. § 1452(b) ("court . . . may remand such **claim or cause of action** . . . .") (emphasis added).[12]

49. Based on § 1452(b), the Court will sever and remand the following claims or causes of action back to the 192nd Judicial District Court of Dallas County, Texas:

---

[12] For guidance in this situation, the Court also looks to 28 U.S.C. § 1441(c)(2), which provides that a court may sever and remand claims not within the original or supplemental jurisdiction of the district court back to the state court. *See also Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 129 (1995) ("There is no express indication in § 1452 that Congress intended that statute to be the exclusive provision governing removals and remands in bankruptcy."). Section 1441(c)(2) enables the district court to retain all matters for which it has jurisdiction and remand only those claims over which it lacks jurisdiction. 28 U.S.C. § 1441(c)(2). The Court interprets § 1452(b) in similar fashion based on the statute's use of "claim" and "cause of action" in the singular form.

21

- Plaintiffs' usury claim against the Wadley Defendants; and

- The Hoge Claims for Misappropriation of Name, Tortious Interference, Infringement of Common Law Mark, and Civil Conspiracy against Garrett Johnson, Brandi E. Johnson, and Jacob "Jack" Ziegler.

### IV.    Conclusion

Upon analyzing all claims or causes of action brought in this adversary proceeding, the Court lacks bankruptcy jurisdiction over Plaintiffs' usury claim against the Wadley Defendants and the Hoge Claims for Misappropriation of Name, Tortious Interference, Infringement of Common Law Mark, and Civil Conspiracy against Garrett Johnson, Brandi E. Johnson, and Jacob "Jack" Ziegler. The Court has bankruptcy jurisdiction over all other claims in this adversary proceeding.

Therefore, the Court grants in part and denies in part the Motion to Dismiss. The Court will enter a separate order consistent with this opinion that remands the above-described claims back to the 192nd Judicial District Court of Dallas County, Texas.

### ###End of Memorandum Opinion###

22